FILED
2011 Jan-31  PM 03:41
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CINDY D. BLIZZARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CV-09-S-977-NE** |
| | ) | |
| **JOHN M. MCHUGH, Secretary** | ) | |
| **of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Cindy Blizzard, filed this case on May 18, 2010, asserting a claim against her employer, John M. McHugh, the Secretary of the United States Department of the Army,[1] for violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("the ADA"). She also asserts a supplemental state law claim for breach of a settlement agreement she entered into with her employer.[2]

---

[1] Plaintiff's complaint originally named as a defendant Pete Geren, who was the Secretary of the Army on the date the complaint was filed. *See* doc. no. 1 (Complaint). Since that date, John McHugh replaced Pete Geren as Secretary of the Army. Therefore, McHugh is automatically substituted as a defendant in Geren's place. *See* Fed. R. Civ. P. 25(d).

[2] *See* doc. no. 1 (Complaint). As defendant is a federal agency, plaintiff's claims should have been brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("the Rehabilitation Act"), instead of the ADA. *See, e.g., Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000). Plaintiff's failure to appropriately plead her claim ultimately is immaterial, however, because the same standards apply under both the ADA and the Rehabilitation Act. *See, e.g., Cash v. Smith*, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000) (holding that, because cases involving the Rehabilitation Act are governed by the same standard as cases involving the ADA, Rehabilitation Act cases usually are precedent for ADA cases and vice versa).

The case currently is before the court on the following motions: (1) defendant's motion to dismiss plaintiff's complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted;[3] (2) defendant's second motion to dismiss or, in the alternative, for summary judgment;[4] and (3) plaintiff's motion for summary judgment.[5]   Upon consideration, the court concludes that defendant's motion to dismiss for lack of subject matter jurisdiction should be granted, defendant's motion for summary judgment also should be granted, and plaintiff's motion for summary judgment should be denied.

## I. STANDARDS OF REVIEW

### A.   Rule 12(b)(6):   Failure To State A Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).[6]  This rule must be read together with Rule 8(a),

_____

[3]Doc. no. 11.  The court will consider the motion to dismiss as it was amended on June 8, 2010.  *See* doc. no. 15.

[4]Doc. no. 18.

[5]Doc. no. 22.

[6] In full text, Rule 12(b) provides that:

Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

which requires that a pleading contain only a "short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While that

pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp.

v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. —, 129

S. Ct.  1937, 1949 (2009) (citations omitted).

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555].  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.

> To survive a motion to dismiss founded upon Federal Rule of

---

(1) lack of subject-matter jurisdiction;

(2) lack of personal jurisdiction;

(3) improper venue;

(4) insufficient process;

(5) insufficient service of process;

(6) failure to state a claim upon which relief can be granted; and

(7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b).

Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.

> While *legal conclusions* can provide the framework of a complaint, they
> must be supported by factual allegations.  *When there are well-pleaded
> factual allegations*, *a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement to relief*.

*Ashcroft*, 556 U.S. at —, 129 S. Ct. at 1949-50 (emphasis added).

## B.    Rule 12(b)(1):  Lack Of Subject Matter Jurisdiction

Federal district courts are tribunals of limited jurisdiction, "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress."  *University of South Alabama v. The American Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).  Accordingly, an "Article III court must be sure of its own jurisdiction before getting to the merits" of any action.  *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998)).

A motion to dismiss a case for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1).[7]  When ruling upon a Rule 12(b)(1) motion asserting a lack of jurisdiction on the face of the plaintiff's complaint, as with a Rule

---

[7]Rule 12(b)(1) provides that "a party may assert the following defenses by motion:  (1) lack of subject-matter jurisdiction. . . ."  Fed. R. Civ. P. 12(b)(1).

12(b)(6) motion,[8] the court must consider the allegations of the complaint as true.  *See Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir. 1981)[9] (citations omitted).

## C.     Rule 56: Summary Judgment

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[10]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of*

---

[8]Rule 12(b)(6) provides that "a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

[9]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[10] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

*Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving

party are not unqualified, however.  "[A]n inference is not reasonable if it is only a

guess or a possibility, for such an inference is not based on the evidence, but is pure

conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321,

1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary
> judgment unless that factual dispute is *material* to an issue affecting the
> outcome of the case.  The relevant rules of substantive law dictate the
> materiality of a disputed fact.  A genuine issue of material fact does not
> exist unless there is sufficient evidence favoring the nonmoving party for
> a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).  *See*

*also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether

the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law").

## II.  STATEMENT OF FACTS

Plaintiff, Cindy Blizzard, is employed as a contracting officer by the United

States Department of the Army ("the Army") at the Army Aviation and Missile

Command Contracting Center in Huntsville, Alabama.[11]  In January of 2006, plaintiff

initiated an Equal Employment Opportunity ("EEO") complaint against her employer,

---

[11]Defendant's evidentiary submission, Exhibit 1 (Deposition of Cindy Blizzard), at 39-40.

alleging that she was subjected to discrimination based upon a perceived, but unspecified, disability.[12]

On May 15, 2007, plaintiff and defendant entered into a "Negotiated Settlement Agreement" ("the NSA" or "the Agreement") to resolve that EEO complaint.  Pursuant to the NSA, the Army agreed as follows:

    a.    The Agency agrees to move Complainant on 14 May 2007 to the United States Army Aviation and Missile Command (AMCOM) Acquisition Center's base operations organization currently under the supervision of Ms. Debra Scruggs.

    b.    Within five calendar days to initiate action to pay to the Complainant a lump sum of fifteen thousand [dollars] and No Cents ($15,000.00) as damages, including compensatory damages, attorney's fees and costs.

    c.    The AMCOM Acquisition Center will offer Complainant a promotion to GS-1102-12 at the time she has fulfilled the eligibility requirements of a GS-1102-12, 52 weeks from 1 April 2007.[13]

The Agreement also stated the following with regard to plaintiff's rights in the event of a breach:

If the Complainant believes that the Army has failed to comply with the terms of this Settlement Agreement, the Complainant shall notify the

Department of the Army, EEO & Civil Rights

---

[12]Doc. no. 1 (Complaint), at ¶ 7; Blizzard Deposition, at 17-39.

[13]Defendant's evidentiary submission, Exhibit 4 (Negotiated Settlement Agreement), at ¶ 6.

EEO Compliance and Complaints Review Agency
1st Floor, Room 109B
1901 South Bell Street
Arlington, Virginia  22202-4508

The complainant shall also provide a copy of the notice to the activity EEO Officer at the following address:  Director, EEO, IMSE-RED-EEO, Redstone Arsenal, Alabama  35898-5000.  The notice of the alleged noncompliance shall be made in writing, within thirty (30) calendar days of when the Complainant knew, or should have known, of the alleged noncompliance.  The Complainant may request that the terms of the Settlement Agreement be specifically implemented, or, alternatively, that the agreement be nullified and the complaint be reinstated for further processing from the point processing ceased under the terms of this Agreement.  If, after thirty-five (35) calendar days from the date of the Agency's receipt of the Complainant's written allegations of noncompliance with the settlement agreement, the Agency (Director, EEOCCR) has not responded to the Complainant in writing, or if the Complainant is not satisfied with the Agency's attempt to resolve the matter, the Complainant may appeal to the Equal Employment Opportunity Commission, Office of Federal Operations, P.O. Box 19848, Washington, DC 20036 for a determination as to whether or not the agency has complied with the terms of the Settlement Agreement.  Such an appeal may be filed 35 days after service of the allegation of noncompliance on the Agency, but not later than 30 calendar days after receipt of the Agency's written response to the allegation.[14]

Immediately after the Agreement was executed, and in accordance with the terms of the Agreement, the Army transferred plaintiff to work at AMCOM's base operations organization under the supervision of Debra Scruggs.[15]  On April 23, 2008, plaintiff received an e-mail from Diane Couch, who then served as a Management Analyst for the AMCOM Contracting Center, stating:

---

[14]*Id.* at ¶ 9.

[15]Blizzard Deposition, at 54-55.

Cindy,

In accordance with your settlement agreement dated 15 May 2007, you have fulfilled the eligibility requirements to be non-competitively promoted to GS-1102-12 within the Acquisition Center.   Based on review of the center's current mission and needs, the following positions are being offered to you:

      a.    GS-1102-12 – Aviation Logistics Directorate, Ms. Pamela Myres, Director

      b.    GS-1102-12 – PEO Aviation CH-47 Directorate, Mr. Willis Epps, Director.

Please let us know which position you would like to accept.[16]

On April 28, 2008, plaintiff's attorney sent a letter to David Points, "Attorney for Agency," stating:

Ms. Blizzard [the plaintiff herein] has forwarded to us an email from Diane Couch, offering her two positions as a GS-1102-12, for different assignments outside of AMCOM.  In the settlement agreement, the Army agreed to "move Complainant on 14 May 2007 to the United States Army Aviation and Missile Command (AMCOM) Acquisition Center's base operations organization currently under the supervision of Ms. Debra Scruggs."  There is nothing in the agreement to indicate that it was a temporary assignment.  Based on this, Ms. Blizzard should stay in AMCOM upon her promotion to GS-1102-12.

Additionally, the agreement states that, "[t]he AMCOM Acquisition Center will offer Complainant a promotion to GS-1102-12 at the time she has fulfilled the eligibility requirements of a GS-1102-12, 52 weeks from April 1, 2007."  This supports Ms. Blizzard staying in AMCOM, rather than being transferred.

---

[16]Defendant's evidentiary submission, at Exhibit 5.  *See also* defendant's evidentiary submission, Exhibit 2 (Declaration of Diane P. Couch), at ¶ 1.

We must also point out that Ms. Blizzard has not received the promotion to GS-1102-12 to date, in violation of the agreement. Instead, she was promoted to GS-1102-11, step 2. Please rectify the matter, and compensate her the backpay she is due from April 1, 2008 to the date of correcting her promotion and pay.[17]

On May 9, 2008, Ms. Marlene Cruze, the Executive Director of the AMCOM

Contracting Center, sent plaintiff's attorney a response to his April 28 letter, stating,

in pertinent part:

In regards to Ms. Cindy Blizzard's promotion to GS-1102-12, Contract Specialist, within AMCOM Acquisition Center, the enclosed email forwarded to Ms. Blizzard is an offer of a GS-1102-12, Contract Specialist within the AMCOM Acquisition Center. The agreement states that "the AMCOM Acquisition Center will offer Complainant a promotion to GS-1102-12 at the time she has fulfilled the eligibility requirements of a GS-1102-12, 52 weeks from April 1, 2007." The email is supporting this agreement by offering Ms. Blizzard two options for placement at the GS-1102-12 within the AMCOM Acquisition Center. The agreement does not state that she will remain within the Operations and Services Directorate, but that the AMCOM Acquisition Center will offer her a GS-1102-12 within the Center.

Based upon current mission requirements and the need for qualified GS-1102-12 Contract Specialists within the two specifically mentioned directorates, Ms. Blizzard has a choice of two positions from which to make her decision.[18]

Over the next few months, plaintiff continued to assert that defendant's offer of

---

[17] Defendant's evidentiary submission, at Exhibit 6.

[18] Defendant's evidentiary submission, at Exhibit 7.

two promotional opportunities was not in accordance with the terms of the NSA.[19]

When defendant did not change its position, plaintiff filed a complaint of non-compliance with the Department of the Army Equal Employment Opportunity Compliance and Complaints Review Division ("EEOCCR") in Arlington, Virginia. In a decision dated September 29, 2008, the EEOCCR found that the Army had not violated the NSA. More specifically, the September 29 decision stated:

> The settlement agreement in the instant case provided for Complainant's promotion to GS-1102-12 upon fulfillment of eligibility requirements. Once those requirements were met the Agency sent your client an email attempting to effectuate the promotion. Your client declined several times to accept one of the promotional positions. The record reflects that the agency met its obligations when it offered the promotional positions to the Complainant to a GS-1102-12. The fact that the positions were in another directorate is of no consequence. EEOC has found that the operational needs of an agency may determine where an employee works once that employee has been promoted in accordance with an NSA. . . . Further, your client's NSA does not explicitly state that she has to remain within the Operations and Services Directorate upon promotion. . . . You[r] client's NSA, plain and simple, stated that she would receive a promotion within the AMCOM Acquisition Center. The Agency, in good faith, has offered the promised promotion. Here, the record reflects that the Complainant's promotional offers were based on the mission needs of the organization . . . . Based on the record, supporting documentation and the specific terms of the NSA, I find that the Agency is in compliance with the NSA. There is no breach on behalf of the Agency.[20]

---

[19]*See* defendant's evidentiary submission, Exhibits 8 & 9 (June 17, 2008 and July 24, 2008 letters from plaintiff's attorney to various representatives of the Army). *See also* plaintiff's evidentiary submission, at Exhibit 7 (August 27, 2008 letter).

[20]Defendant's evidentiary submission, Exhibit 11, at 3.

Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission, Office of Federal Operations, on October 29, 2008.[21]  On February 13, 2009, the EEOC issued a decision in the Army's favor.  The decision letter stated, in pertinent part:

> In the instant case, the Commission finds that the agency is in compliance with the settlement agreement.  The agreement required the agency to offer complainant a promotion within the AMCOM Acquisition Center, not within a specific directorate.  If complainant expected to remain within her position or directorate she should have so stated in the agreement.  The agency offered complainant two positions to choose from and she rejected both.  It had no duty to keep offering complainant positions. . . . As such, the agency is in compliance with the agreement.[22]

The EEOC's decision letter also informed plaintiff that she had a right to file a civil action in an appropriate United States District Court within ninety days of receiving the decision.[23]

Plaintiff filed her complaint in this case on May 18, 2009.[24]  To support her claim for disability discrimination, she offers the following, one-sentence allegation: "By failing or refusing to follow the Agreement and promote Ms. Blizzard to GS-1102-12, Defendant continues to discriminate and/or retaliate against the Plaintiff in

---

[21]*See* defendant's evidentiary submission, at Exhibit 12.

[22]Defendant's evidentiary submission, Exhibit 13, at 2.

[23]*Id.* at 3.

[24]*See* doc. no. 1 (Complaint).

violation of the ADA."[25]   To support her claim for breach of the Settlement Agreement, plaintiff states:

> 14.   Defendant has failed to promote Plaintiff to GS-1102-12, in violation of the terms of the Agreement it signed on 15 May 2007.

> 15.   This failure to promotion [sic] was a material breach of the contract between the Plaintiff and the Defendant.

> 16.   Plaintiff seeks to enforce the terms of this Agreement, that the agreement that she is promoted to GS-1102-12, effective April 2, 2008, be specifically implemented or performed by Defendant.[26]

As relief for her claims, plaintiff requests that the court:

> (a)   Grant the Plaintiff a declaratory judgment that the actions described hereinabove violated and continue to violate the rights of the Plaintiff as secured by the terms of the Agreement;

> (b)   Award the Plaintiff the promotion and back pay she is due under the Agreement;

> (c)   Award the Plaintiff prejudgment interest, costs and expenses, including a reasonable attorney's fee;

> (d)   Award compensatory and consequential damages as a result of Defendant's breach of the Settlement Agreement;

> (e)   In the alternative, the terms of the Agreement be nullified and the complaint be reinstated from the point that processing ceased under the terms of the Agreement; and

---

[25]*Id.* at ¶ 12.

[26]*Id.* at ¶¶ 14-16.

(f)     Such other relief as may be just and proper.[27]

# III. DISCUSSION

## A.     Claims to Enforce the Negotiated Settlement Agreement

Before reaching any of the parties' substantive arguments,[28] the court must

determine whether it may properly exercise subject matter jurisdiction over plaintiff's

claims to enforce the NSA.

Defendant argues that there is no federal jurisdiction over plaintiff's claims for

breach of the NSA because the United States has not waived  sovereign immunity for

---

[27]*Id.* at unnumbered pages 4-5 (Prayer for Relief).

[28]In its first motion to dismiss, defendant argued that plaintiff's Rehabilitation Act claim (Count One) should be dismissed because plaintiff failed to allege sufficient facts to support a viable claim, and because plaintiff failed to exhaust her available administrative remedies with regard to that claim.  Defendant also argued that plaintiff's supplemental state law claim (Count Two) should be dismissed because there has been no waiver of the United States' sovereign immunity for claims to enforce a settlement agreement negotiated during the federal administrative complaint resolution process, and because plaintiff failed to exhaust her available administrative remedies with regard to the claim. *See* doc. no. 11 (defendant's motion to dismiss) and doc. no. 17 (defendant's reply in support of motion to dismiss).  In its second motion to dismiss or, in the alternative, for summary judgment, defendant argued that it was in compliance with the NSA, and also reiterated its previous arguments about lack of subject matter jurisdiction and failure to exhaust administrative remedies. *See* doc. no. 18 (defendant's motion to dismiss or, in the alternative, for summary judgment); doc. no. 20 (defendant's amended brief in support of motion to dismiss or, in the alternative, for summary judgment); doc. no. 30 (defendant's reply in support of motion to dismiss or, in the alternative, for summary judgment).  Plaintiff argues that she exhausted all available administrative remedies, that she adequately stated a claim for disability discrimination, that this court does possess subject matter jurisdiction over the action, and that defendant did fail to comply with the terms of the NSA.  *See* doc. no. 16 (plaintiff's response to defendant's motion to dismiss); doc. no. 22 (plaintiff's motion for summary judgment); doc. no. 23 (plaintiff's brief in support of motion for summary judgment); doc. no. 26 (plaintiff's brief in opposition to defendant's motion to dismiss or, in the alternative, for summary judgment).

judicial review of settlement agreements reached during the federal administrative EEO process.  "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586 (1941) (citations omitted).  All waivers of the nation's sovereign immunity must be "unequivocally expressed," and all expressed waivers will be strictly construed.  *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33 (1994); *see also id.* at 34 (recognizing the "traditional principle that the Government's consent to be sued 'must be construed strictly in favor of the sovereign,' . . . and not 'enlarge[d] . . . beyond what the language requires'") (citations omitted) (bracketed alterations in original); *Library of Congress v. Shaw,* 478 U.S. 310, 318 (1986) ("In analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign . . . and not enlarge the waiver "'beyond what the language requires.'") (citations omitted).  When it applies, sovereign immunity is "a complete bar to lawsuits" against the United States.  *State of Fla., Dept. of Business Regulation v. U.S. Dept. of Interior,* 768 F.2d 1248, 1251 (11th Cir. 1985).

The protection of sovereign immunity generally extends to claims against the United States, agencies of the United States government, and employees of those agencies sued in their official capacities.  *See, e.g., Simons v. Vinson,* 394 F.2d 732, 736 (5th Cir. 1968) ("The immunity of the sovereign, however, extends to its agencies

16

. . . and to the officers of these agencies."); *Kozera v. Spirito,* 723 F.2d 1003, 1008-09

(1st Cir. 1983) ("A federal officer sued for damages in her official capacity is immune

from suit absent an express consent to suit or waiver of immunity.") (citation omitted).

As the Eleventh Circuit has stated:

> In analyzing the use of any sovereign immunity defense, the first
> question is whether the doctrine applies at all: Is the action a suit against
> the United States as a sovereign?  The answer is obtained by examining
> the nature of the relief which may be provided.  *Alabama Rural Fire
> Insurance Co. v. Naylor,* 530 F.2d 1221, 1225 (5th Cir. 1976).  *See
> Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 687 n.6,
> 69 S. Ct. 1457, 1460 n.6, 93 L. Ed. 1628 (1949).  An action is one against
> the United States as a sovereign where the judgment sought is to be
> satisfied from monies of the federal Treasury, or where the judgment
> interferes with public administration, or where the judgment's effect is
> to compel or restrain the government's actions.  *Dugan v. Rank,* 372 U.S.
> 609, 620, 83 S. Ct. 999, 1006, 10 L. Ed. 2d 15 (1963); *Alabama Rural
> Fire Insurance Co. v. Naylor,* 530 F.2d at 1225.

*Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1555 (11th Cir. 1985).[29]

Plaintiff asserts that Congress waived the nation's sovereign immunity for suits

to enforce settlement agreements reached during the federal administrative EEO

process when it enacted 42 U.S.C. § 2000e-5 and its implementing regulations.[30]  That

---

[29]An exception to this general principle exists when the suit alleges: "(1) action by officers
beyond their statutory powers and (2) even though within the scope of their authority, the powers
themselves or the manner in which they are exercised are constitutionally void."  *Dugan,* 372 U.S.
at 621-22 (citing *Malone v. Bowdoin,* 369 U.S. 643, 647 (1962)).  Plaintiff does not allege that either
of these exceptions applies here.

[30]The court recognizes that plaintiff's complaints were made pursuant to the Rehabilitation
Act, not pursuant to Title VII of the Civil Rights Act.  Even so, the remedial scheme is the same
under both statutes.  *See* 29 U.S.C. § 794a(a)(1) ("The remedies, procedures, and rights set forth in

statutory section allows civil actions to be brought in the United States District Courts for violations of Title VII's anti-discrimination and anti-retaliation provisions.[31] Furthermore, 42 U.S.C. § 2000e-16(a) provides that "[a]ll personnel actions affecting employees or applicants for employment [by federal agencies] shall be made free from any discrimination . . . ." Subsection (c) of 42 U.S.C. § 2000e-16 permits an employee aggrieved by the administrative action taken on his complaint against a federal employer to file a lawsuit in federal district court pursuant to 42 U.S.C. § 2000e-5.[32]

section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e-5(f) through (k)), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint.").

[31]The full text of the pertinent portion of 42 U.S.C. § 2000e-5 is as follows:

If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

42 U.S.C. § 2000e-5(f)(1).

[32]The full text of subsection (c) is as follows:

Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of

In light of the Eleventh Circuit's decision in *Thompson v. McHugh,* 388 Fed. Appx. 870 (11th Cir. 2010), this court cannot agree that these statutory provisions invoke a waiver of the United States' sovereign immunity.

In *Thompson,* the plaintiff entered into a negotiated settlement agreement with her employer, the Army, to resolve a sexual harassment claim. Four days after executing the agreement, Thompson requested that it be rescinded on grounds of coercion and duress. After the Army and the EEOC both denied her claim, Thompson filed a lawsuit in federal district court, seeking to void the agreement and have her sexual harassment case referred for additional processing. The district court dismissed the case for lack of subject matter jurisdiction. *Thompson,* 388 Fed. Appx. at 871. On appeal, Thompson contended there were three grounds for asserting federal jurisdiction over her case: (1) Title VII, particularly 42 U.S.C. §§ 2000e-16 and 2000e-5(f)(3); (2) federal regulations promulgated by the EEOC, including 29 C.F.R. §

---

such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eight days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

42 U.S.C. § 2000e-16(c).

1614.504, 1614.401, and 1614.407; and (3) public policy. The Eleventh Circuit rejected each of Thompson's arguments. *Id.* at 872.

First, the Eleventh Circuit looked to the statutory language of Title VII itself, which "waives sovereign immunity when a federal employee seeks relief for *unlawful employment practices* — that is, for 'any *discrimination* based on race, color, religion, sex, or national origin.'" *Id.* (quoting 42 U.S.C. § 2000e-16(a) & (c)) (emphasis supplied). Thompson's suit did not seek any relief for discrimination; instead, she alleged "contract rescission, a claim that is founded on general principles of contract law." *Thompson,* 388 Fed. Appx. at 872. "That the contract in question resolved Title VII complaints [was] incidental to Thompson's rescission claim . . . ." *Id.* Thus, because Thompson's contract rescission claim did not fall within the scope of Title VII's waiver of sovereign immunity, Title VII did not provide a basis for exercising federal jurisdiction. *Id.* at 873.

The Eleventh Circuit also held that EEOC regulations implementing Title VII's anti-discrimination provisions did not provide a waiver of the United States' sovereign immunity. More specifically, the Court stated:

> The fact that the EEOC has been given broad power to promulgate regulations does not waive sovereign immunity. "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 2096, 135 L. Ed.2d 486 (1996) (citations

20

omitted).  The scope of any waiver must be strictly construed in favor of the government.  *Id.*

In addition, the specific regulations cited by Thompson do not indicate that Congress intended to waive sovereign immunity for claims to rescind Title VII settlement agreements.  *See Heller v. United States*, 776 F.2d 92, 98 n. 7 (3d Cir. 1985) ("[G]overnment regulations alone, without the express intent of Congress, cannot waive sovereign immunity.").  Section 1614.504 provides a complainant with certain internal and administrative remedies if she "believes that the agency has failed to comply with the terms of a settlement agreement." 29 C.F.R. § 1614.504.  Section 1614.401 authorizes appeals to the EEOC from "an agency's final action" or "an agency's alleged noncompliance with a settlement agreement or final decision in accordance with § 1614.504." *Id.* § 1614.401(a), (e).  Neither of these regulations mentions the possibility of filing a civil action in federal district court.  The only regulation that does so, section 1614.407, sets forth filing deadlines for a complainant who "is authorized under Title VII, the ADEA and the Rehabilitation Act to file a civil action." *Id.* § 1614.407.  Section 1614.407 does not purport to authorize civil actions other than those already authorized by the various statutes.  In short, the regulations cited by Thompson do not establish that the government has specifically consented to be sued for claims to rescind Title VII settlement agreements.  *See United States v. Transocean Air Lines, Inc.*, 386 F.2d 79, 81 (5th Cir. 1967) ("The right [to sue the United States] can be acquired only by the specific consent of Congress, which is not present here.").

*Thompson,* 388 Fed. Appx. at 873-74 (footnotes omitted).

Finally, the Eleventh Circuit rejected Thompson's public policy argument, again reiterating the fundamental principle that "'[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in a statutory text.'" *Id.* at 874 (quoting *Lane,* 518 U.S. at 192).

All of the Eleventh Circuit's rationales stated in *Thompson* apply with equal force to the facts of the case at hand.  Plaintiff's claims are not based upon a direct violation of the anti-discrimination laws, but upon a violation of a contract she entered into with her employer to resolve her discrimination claims.  Therefore, general contract principles, *not* the Rehabilitation Act, will apply to resolve her claim, and the United States' waiver of sovereign immunity for Rehabilitation Act claims will not extend to plaintiff's claims for breach of a settlement agreement.  Additionally, no federal regulations provide a waiver of the United States' sovereign immunity that would be applicable to plaintiff's claims.  The regulations provide *administrative* remedies to a federal employee who believes her employer has breached a settlement agreement,  but they do not authorize that employee to file a civil action in federal district court based solely upon breach of the agreement.  This is true despite the fact that the EEOC informed plaintiff that she had 90 days after receiving notice of its decision to file a civil action in district court.  As the Eleventh Circuit stated in *Thompson,* "an agency's actions cannot waive sovereign immunity." *Thompson,* 388 Fed. Appx. at 874 (citing *United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654, 660 (1947)).  Finally, plaintiff has not even attempted to argue that public policy favors the exercise of federal jurisdiction, and the court finds that there is no policy supporting a waiver of the United States' sovereign immunity under the facts of this

case.

Further, this court does not agree with plaintiff that the Eleventh Circuit's decision in *Jones v. Wynne,* 266 Fed. Appx. 903 (11th Cir. 2008), mandates a different decision.  In *Jones*, the Eleventh Circuit considered a claim by an Air Force employee against the Secretary of the Air Force for breach of a settlement agreement that resolved the employee's Title VII administrative complaint.  *Id.* at 904. The Eleventh Circuit outlined the administrative remedies the plaintiff was required to pursue to rectify the alleged breach, including those set forth in 29 C.F.R. §§ 1614.401, 1614.407, and 1614.504.  *Id.* at 905.  The Court concluded that the plaintiff had not completely followed that administrative process, and that, even if she had, the defendant had not breached the settlement agreement.  *Id.* at 906.  In so holding, the Court never explicitly addressed whether it had jurisdiction to consider the plaintiff's claim for breach of the settlement agreement.

Even though the *Thompson* decision distinguished *Jones* on the basis that *Jones* was an action to *enforce* a settlement agreement, while *Thompson* was an action to *rescind* a settlement agreement, that distinction is not material.  The *Thompson* Court stated the following in a footnote:

> Although Thompson argues that she merely followed the procedure outlined in *Jones v. Wynne*, 266 Fed. Appx. 903, 905 (11th Cir. 2008), her reliance on *Jones* is unavailing. Unpublished opinions

such as *Jones* "are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n. 7 (11th Cir. 2007). Also, *Jones* is "not persuasive because its facts are materially different from this case." *Id.* When a federal employee alleges breach of a Title VII settlement agreement, as did the plaintiff in *Jones,* federal regulations provide certain internal and administrative remedies. *See* 29 C.F.R. §§ 1614.504, 1614.401(e). However, the regulations are silent with respect to claims for rescission of Title VII settlement agreements. The *Jones* Court had no need or occasion to consider the proper procedure for claims like the one Thompson brought in this case.

*Thompson,* 388 Fed. Appx. at 873 n.1. Essentially, the Eleventh Circuit is saying that just because Thompson followed the regulatory procedures outlined in *Jones* did not mean she was entitled to invoke the federal court's jurisdiction. *Jones* properly summarized the administrative process a plaintiff is required to follow if she believes her employer has violated a settlement agreement. Even so, *Jones* never explicitly addressed the question of subject matter jurisdiction, and certainly never held that subject matter jurisdiction would exist as long as the plaintiff had followed the administrative process. "[I]t is well-established circuit law that '[the Court] is not bound by a prior decision's *sub silentio* treatment of a jurisdictional question.'" *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.,* 475 F.3d 1228, 1231 (11th Cir. 2007) (citations omitted). "There is, in other words, an exception to the prior panel precedent rule[33] for implicit jurisdictional holdings. If jurisdictional holdings are

_____

[33]Under the prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court

explicit, they must be followed, not so if they are only implicit." *Main Drug,* 475 F.3d at 1231. The *Jones* Court only *implicitly* held that it had subject matter jurisdiction over the plaintiff's claims by proceeding to decide the case on its merits. Therefore, the holding in *Jones* is not binding on this court in determining its jurisdiction over the claims asserted herein.

Furthermore, the distinction between a claim to enforce a settlement agreement and a claim to rescind a settlement agreement should have no logical effect on the Eleventh Circuit's reasoning in *Thompson*. Regardless of whether a plaintiff's claim is one to *enforce* an agreement or to *rescind* it, the court's decision will be based on principles of contract law, not on the anti-discrimination statutes. The fact that the underlying agreement may have resolved a Rehabilitation Act complaint would be merely incidental to the plaintiff's claim to enforce the agreement, just as it would be merely incidental to a claim to rescind the agreement. Additionally, if a cause of action to *enforce* a settlement agreement is not authorized by federal statues, it also cannot be authorized by federal regulations, just as with a cause of action to *rescind* a settlement agreement. Finally, the court can conceive of no public policy

---

or by this court sitting *en banc.*" *U.S. v. Sneed,* 600 F.3d 1326, 1332 (11th Cir. 2010) (citing *Smith v. GTE Corp.,* 236 F.3d 1292, 1300 n. 8 (11th Cir.2001); *Chambers v. Thompson,* 150 F.3d 1324, 1326 (11th Cir.1998)).

justification for the exercise of federal jurisdiction over a claim to *enforce* a settlement agreement entered into to resolve a complaint of discrimination by a federal employee, just as there is no policy reason to justify the exercise of federal jurisdiction over a claim to *rescind* a similar agreement.

In summary, this court concludes that the United States has not waived its sovereign immunity with regard to claims to enforce settlement agreements entered into to resolve complaints of employment discrimination by federal employees. Accordingly, there is no basis for the exercise of federal subject matter jurisdiction over plaintiff's claims in this case to enforce her settlement agreement with the Army.[34]

## B.    Discrimination Claims

To the extent plaintiff intended to assert a claim for disability-based discrimination separate and apart from her claim to enforce the NSA, she cannot prevail.  Plaintiff's complaint mentions only that she had a prior administrative complaint against defendant for disability discrimination and retaliation, that she

---

[34]This decision is in accordance with the decisions of other courts of appeals.  *See, e.g., Munoz v. Mabus,* – F.3d – , 2010 WL 5263141, at *5 (9th Cir. Dec. 27, 2010) ("The regulatory context does not support an implied cause of action for the enforcement of predetermination settlement agreements."); *Lindstrom v. United States,* 510 F.3d 1191, 1194 (10th Cir. 2007) ("The regulation does not authorize a suit to enforce the settlement agreement . . . ."); *Frahm v. United States,* 492 F.3d 258 (11th Cir. 2007) ("[T]his statutory waiver [of sovereign immunity] does not expressly extend to monetary claims against the government for breach of a settlement agreement that resolves a Title VII dispute.").

settled that complaint with defendant, and that defendant has allegedly failed to comply with the terms of the settlement agreement.  Plaintiff has offered no authority, and the court has located none, to support a violation of the Rehabilitation Act based solely upon breach of a settlement agreement.  Furthermore, plaintiff has offered no allegation, argument, or evidence to support either the existence of a disability, or any discriminatory or retaliatory actions taken by defendant.  Absent any proof (or even any substantive allegation) of discrimination or retaliation on the basis of a disability, plaintiff cannot maintain a claim under the Rehabilitation Act.

## IV. CONCLUSION AND ORDER

Based on the foregoing, defendant's motion to dismiss plaintiff's claims to enforce the settlement agreement due to lack of subject matter jurisdiction is GRANTED.  Defendant's motion for summary judgment on plaintiff's claim for violations of the Rehabilitation Act also is GRANTED.  Plaintiff's motion for entry of summary judgment in her favor is DENIED.

It is ORDERED that all of plaintiff's claims are DISMISSED with prejudice. Costs are taxed to plaintiff.  The Clerk is directed to close this file.

DONE this 31st day of January, 2011.

_____
United States District Judge